UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNA LEMLER,

      Plaintiff,                      Judge

v                                                  No.

WASHTENAW INTERMEDIATE SCHOOL
DISTRICT and HOLLY HEAVILAND,

      Defendants.
_____/

| MATTHEW KRICHBAUM (P52491) | TIMOTHY J. MULLINS (P28021) |
|---|---|
| SOBLE ROWE KRICHBAUM LLP | GIARMARCO, MULLINS & HORTON, P.C. |
| *Attorney for Plaintiff* | *Attorney for Defendants* |
| 302 E. Liberty Street | 101 W. Big Beaver Road, 10th Floor |
| Ann Arbor, MI 48104 | Troy, MI 48084-5280 |
| (734) 996-5600 | (248) 457-7020 |
| mattheew@srkllp.com | tmullins@gmhlaw.com |

_____

## **NOTICE OF REMOVAL**

      Defendants, WASHTENAW INTERMEDIATE SCHOOL DISTRICT and HOLLY HEAVILAND, by and through their attorneys, GIARMARCO, MULLINS & HORTON, P.C., file their Notice of Removal from the Washtenaw County Circuit Court, State of Michigan, to the United States District Court for the Eastern District Michigan, Southern Division, pursuant to 28 U.S.C§ 1441 stating as follows:

      1.      This matter is hereby removed pursuant to 28 U.S.C. § 1441.

      2.      Plaintiff commenced the above-entitled action in the Washtenaw

County Circuit Court, State of Michigan, and said case is now pending under Case 20-001087-CZ. A copy of the Plaintiff's Complaint is attached hereto as Exhibit A.

3. This is a civil action alleging free speech claims under the First and Fourteenth amendment through 42 U.S.C. § 1983.

4. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(3) as it has been filed within thirty (30) days after service of copies of the Plaintiff's Complaint and State Court proceedings and/or voluntary acceptance of process and appearance by Defendants herein as of November 18, 2020.

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1441 because the claims involve Federal questions and the subject of the Plaintiff's Complaint represents subject matter jurisdiction although there is, upon information and belief, non-diversity of citizenship between the parties.

6. The United States District Court for the Eastern District of Michigan, Southern Division, is the Federal District embracing the Washtenaw County Circuit Court, State of Michigan, where the suit is pending and, therefore, removal to this Court is proper pursuant to 28 U.S.C. § 1441.

7. Upon the filing of this Notice of Removal, these Defendants will promptly serve a copy of this document, together with a Notice of Removal of Case to Federal Court on all adverse parties pursuant to 28 U.S.C. § 1446. Said Notices will also be filed with the Clerk of the Washtenaw County Circuit Court, State of

Michigan.

8. When filing this Notice, Defendants do not waive any defenses which may be available to them including, but not limited to, the absence of personal jurisdiction over these Defendants or improper venue in this Court from which this action has been moved.

WHEREFORE, Defendants, WASHTENAW INTERMEDIATE SCHOOL DISTRICT and HOLLY HEAVILAND, pray that the above-entitled action be removed from the Washtenaw County Circuit Court, State of Michigan, to the United States District Court for the Eastern District of Michigan, Southern Division.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021

DATED: November 18, 2020

## **PROOF OF SERVICE**

Timothy J. Mullins states that on November 18, 2020, he served a copy of the **Notice of Removal** upon Matthew Krichbaum by placing same in a sealed envelope, properly addressed, with sufficient first-class postage affixed thereon, in a United States Mail receptacle on the aforementioned date.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021

# Exhibit A

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

ANNA LEMLER, an individual,

    Plaintiff,

v.

WASHTENAW INTERMEDIATE SCHOOL
DISTRICT, a Michigan county agency,
and HOLLY HEAVILAND, an individual,

    Defendants.

20-001087-CZ
Case No. 2020-_____-CZ
Hon. JUDGE TIMOTHY P. CONNORS

---

Matthew Krichbaum (P52491)
SOBLE ROWE KRICHBAUM LLP
Attorney for Plaintiff
302 E. Liberty
Ann Arbor, MI 48104
(734) 996-5600
matthew@srkllp.com

---

## COMPLAINT

There is no other pending or resolved state
court civil action arising out of the transaction
or occurrence alleged in this complaint.

NOW COMES Plaintiff, Anna Lemler, through her attorneys, and for her Complaint states as follows:

1. This Free Speech and Breach of Contract lawsuit arises from Defendants' unlawful termination of Plaintiff's contract due to Plaintiff's exercise of free speech protected under the First Amendment of the United States Constitution and Article I, Section Five of the Michigan Constitution.

FILED IN Washtenaw County Trial Court; 10/26/2020 3:25 PM

## PARTIES

2. Plaintiff Anna Lemler ("Lemler") is an individual who resides in Washtenaw County.

3. Defendant Washtenaw Intermediate School District ("WISD") is a Michigan county agency that is located at 1819 S. Wagner Road, Ann Arbor, MI 48103.

4. Defendant Holly Heaviland is an individual who works and resides in Washtenaw County.

## JURISDICTION AND VENUE

5. The controversy in this case exceeds the minimum jurisdiction of this Court.

6. Venue is appropriate because Defendant WISD is a Washtenaw County agency and the termination of contract occurred in Washtenaw County.

## FACTUAL ALLEGATIONS

7. On April 1, 2017, Plaintiff Lemler and Defendants ("WISD") entered into a contract for Plaintiff Lemler's services relating to a new program serving young people in the Washtenaw County Jail. (Ex 1.)

8. The contract required 30 days advance written notice prior to termination of the contract by either party.

9. The contract was extended twice with the latest extension ending in December 2017.

10. On October 20, 2017, Plaintiff Lemler sent an e-mail to friends and acquaintances inviting them to a bonfire in her backyard to raise funds for an organization supporting community members experiencing homelessness.

2

11. The e-mail further requested that invitees consider donating to a bail fund.

12. On October 24, 2017, Plaintiff Lemler received an unexpected notification that she could no longer access the Washtenaw County Jail.

13. Plaintiff Lemler was subsequently locked out of various documents and platforms she used while working in the jail program.

14. On October 25, 2017, Plaintiff Lemler was blocked out of her WISD e-mail and was asked to attend a meeting with a WISD official and a Washtenaw County Sheriff official.

15. At the October 25, 2017 meeting, Plaintiff Lemler was informed that her contract with WISD was being terminated immediately because of her social activism, which was done on her own time and with her own property, conflicted with access to information as Coordinator for the jail program.

16. Ms. Lemler needed to seek the help of mental health care professionals due to distress over her termination.

**Count I**
*Violation of Article I, Section 5 of the Michigan Constitution*

17. Plaintiff hereby realleges paragraphs 1-16 as if fully restated herein.

18. Article I, Section 5 of the Michigan Constitution of 1963 prohibits Defendants from depriving Plaintiff the right to "freely speak, write, express and publish [her] views on all subjects."

19. In October 2017, Anna Lemler engaged in constitutionally protected activity when she exercised her right to freedom of speech under Article 1, Section 5 of the

3

Michigan Constitution, including without limitation, privately inviting community members to her home in her private time to discuss social issues concerning the general public and her community.

20. Plaintiff Lemler's speech related to a matter of public concern.

21. In terminating Plaintiff Lemler's contract due to her constitutionally protected activity, Defendants violated Plaintiff Lemler's right to freedom of speech under Article 1, Section 5 of Michigan's Constitution.

22. Plaintiff has been proximately damaged by Defendants' violation of Article 1, Section 5.

WHEREFORE Plaintiff respectfully requests judgment against Defendants for compensatory damages, costs, interest, attorney fees, as well as all other relief the Court deems just and equitable.

### Count II
Violation of 42 U.S.C. § 1983
*First Amendment Violation as applied to the states under the Fourteenth Amendment*

23. Plaintiff hereby realleges paragraphs 1-16 as if fully restated herein.

24. Plaintiff Lemler was protected by the First Amendment and Fourteenth Amendment of the United States Constitution.

25. In October 2017, Anna Lemler engaged in constitutionally protected activity when she exercised her First Amendment rights to Free Speech, including without limitation, privately inviting community members to her home in her private time to discuss social issues concerning the general public and her community.

4

26. Plaintiff Lemler's speech related to matters of public concern.

27. In terminating Plaintiff Lemler's contract due to her constitutionally protected activity, Defendants violated Plaintiff Lemler's constitutional rights.

28. Defendants' actions have accordingly violated the First Amendment as well as 42 USCA § 1983.

WHEREFORE Plaintiff respectfully requests judgment against Defendants for compensatory damages, costs, interest, attorney fees and all other relief the Court deems just and equitable.

### Count III
*Breach of Contract*

29. Plaintiff realleges paragraphs 1- 16 as if fully restated herein.

30. In April 2017, Defendants entered into a contract with Plaintiff to pay her for services relating to a youth program at the Washtenaw County Jail. (Ex 1.)

31. Plaintiff and Defendants extended this contract on several occasions.

32. The contract provided that it could be terminated by either party by giving the other 30 days advance written notice.

33. On October 25, 2017, Defendants terminated Plaintiff Lemler's contract without notice.

34. By failing to provide notice, Defendants breached their contract with Plaintiff Lemler.

5

WHEREFORE Plaintiff respectfully requests judgment against Defendants for consequential damages, compensatory damages, costs, interest, attorney fees and all other relief the Court deems just and equitable.

                                    Respectfully submitted,

                                    **SOBLE ROWE KRICHBAUM LLP**

By:   /s/ Matthew E. Krichbaum
        Matthew E. Krichbaum (P52491)
        302 E. Liberty
        Ann Arbor, MI 48104
        (734) 996-5600

Dated: October 26, 2020

# Exhibit 1

| | |
|---|---|
| from: | Sarah C. Hierman <schierman@washtenawisd.org> via washisd.onmicrosoft.com |
| to: | Anna Lemler <alemler@umich.edu> |
| cc: | Sharman Spieser <sds60@comcast.net>, Holly Heaviland <Hheaviland@washtenawisd.org> |
| date: | Mar 6, 2017, 11:55 AM |
| subject: | RE: Meeting Regarding Washtenaw County Jail Program |
| mailed-by: | umich.edu |
| signed-by: | WASHISD.onmicrosoft.com |
| security: | 🔒 Standard encryption (TLS) Learn more |
| ≫ : | Important mainly because it was sent directly to you. |

**Sarah C. Hierman** schierman@washtenawisd.org via washisd.onmicrosoft.com        Mar 6, 2017, 11:55 AM
to Holly, me, Sharman ▼

Hi Anna,

Thank you so much for taking the time to meet with us. Both Holly and I enjoyed our conversation and look forward to your involvement in the program! Per our conversation, I have attached a draft contract for your review. If you would like to discuss any particular items, please let me know. I have a bit of flexibility this week and would be happy to talk through this.

In the meantime, I wanted to share with you our steps for moving the contract forward. This afternoon I will be submitting what's called a CHRI (Criminal History Record Information) to our Human Resources Department. They will review the form and the draft contract and make an initial determination on whether or not fingerprinting will be required. I would fully expect that you'll need to be printed. However, you had indicated in our conversation that you had done some work with Novi Schools. If you were printed for them within the past 12 months, it may be that we can get your prints released from the district. The attached form ("CCHR Rel from Another Dist") would allow them to release that to us. If your prints are not current, you'll need to plan to come in for printing and will need to bring the CHRI form with you once they've made that determination.

I will also need a completed W9, as well as the Jail's Volunteer-Clearance Application (both forms attached) completed and accompanied by a copy of your driver's license. I have indicated to the Jail staff that I will be sending all clearance requests so if you could return directly to me for submission, I would appreciate it.

Please feel free to call me directly with any questions or concerns. I would be happy to talk through all of this with you at any time.

Best,
Sarah

Sarah Hierman, Grants Manager
Washtenaw ISD
1819 South Wagner Rd.
PO Box 1406
Ann Arbor, MI  48106-1406
(734) 994-8100 ext. 1274

CONFIDENTIAL: This email is intended solely for the above-mentioned recipient(s) and it may contain confidential information. Please do not forward this email to others or copy it without receiving prior consent. If you have received it in error, notify me immediately and delete the email.

**4 Attachments**

 Contract.Lemler.doc
 W9.pdf
 CCHR Rel from Ano...
 Volunteer-Clearanc...

Washtenaw I S D
A REGIONAL EDUCATIONAL SERVICE AGENCY

**WASHTENAW INTERMEDIATE SCHOOL DISTRICT**
**Contracted Services Agreement**

This agreement is made this 1st day of April, 2017 by and between Washtenaw Intermediate School District, hereinafter referred to as WISD, and Anna Lemler, hereinafter referred to as Contractor.

It is the intention of the parties hereto to enter into an Agreement defining the nature and extent of the duties to be performed by the Contractor, the place where the services are to be performed and the time limitation on the performance of the duties.

**SECTION I – Scope of Services**

Now, therefore, in consideration of payment to the Contractor of the sums specified in Section II, the Contractor does hereby agree as follows:

1. The Contractor shall commence performance of the duties in Section I, Number 2 no earlier than **April 1, 2017**. Once this contract is implemented, the ending date for providing services shall be June 30, 2017.

2. The Contractor agrees to perform the duties of the Educational Transition & Learning Coordinator role, which is responsible for assessing individual student needs upon Jail entry, and collaborates with the student, Jail, instructional team, home school, and parents/guardians to develop a learning and support services plan that will result in maximum goal achievement and successful transition to next instructional setting. As such, the Contractor will fulfill the following duties and any necessary tasks incident to full performance of the described duties:

   - Establish and maintain communication system with the Jail that includes a schedule of checking in a minimum of three times per week in order to identify eligible program participants within 48 hours of entry.
   - If school (or other) records indicate student is eligible for Special Education services, contact WISD Special Services Jail program liaison immediately to begin working in conjunction with her/him and the appropriate local school district and/or agencies.
   - In collaboration with Special Education team, convene IEP change of placement within five days of identification and integrate Special Ed services into individualized plan, ensuring appropriate accommodations are made for the individual.
   - Upon new student's entry and assessment, assign/schedule teacher(s) or integrate participant into current class schedule based on teacher availability and academic needs.
   - Meet with student as soon as possible to introduce self, describe roles of staff and program, seek information and initiate positive relationship in order to begin collaborative goal setting and planning process.
   - Within five days of being notified of new student being housed in facility, work with home district to identify, secure, and disseminate materials and resources to be utilized while student is in Jail.
   - Conduct intake evaluation by reviewing academic records and consulting with appropriate parties to determine appropriate placement testing.
   - Conduct or coordinate placement testing.
   - In conjunction with the instructional team and program participant, use assessment data to create short and long term goals, and plan of instruction and support that will facilitate achievement of those goals.

- Research and disseminate information related to student experiences in and outside of school, assess the impact of these experiences on student's relationship with learning, and implement program measures needed to restore that (if necessary).
- Work with appropriate instructional team members to design curriculum that ensures maximum academic progress.
- Meet weekly with current program participant(s) to review progress, identify increased support as needed, respond to questions and concerns, adjust plan and affirm successes.
- Design portion of weekly session to build computer literacy with life skills and plan implementation such as career exploration, online employment opportunities, resume creation, budget building, etc.
- Act as liaison between all involved parties (Jail, school, court, program team, parents/guardians) and youth to ensure appropriate information is shared in order to support student.
- Model and support a team-based approach to planning and problem solving.
- In collaboration with instructional team members, create a consistently respectful program/classroom environment utilizing consistent behavior management and restorative practices approaches.
- Participate in meetings, in-service activities, staff development/special programs and planning committees as appropriate to the assignment.
- Consistently support and model WISD vision and mission to enhance achievement for all students.
- Agree to undergo both WISD and the Washtenaw County Jail background clearances or supply evidence of successful completion of both.
- Maintain accurate attendance records and appropriate reports.
- Adhere to Jail and WISD health and safety rules, policies and procedures.

3. The Contractor will be required to provide proof of fingerprinting and criminal background check or will be required to undergo a criminal background check by having fingerprints scanned electronically and submitted to the Michigan State Police. The Contractor will be responsible for payment of the fingerprinting service.

4. The Contractor must also comply with Public Act 131 of 2005, which details the procedure to follow if the Contractor, or any individuals working on behalf of the Contractor, has/have been charged with a crime listed under Section 1535a(1) of the Michigan School Code, or a violation of a substantially similar law of another state, a political subdivision of this state or another state, or of the United States.

## SECTION II - Compensation

WISD does hereby agree as follows:

1. The maximum consideration for the Contractor's services as described in Section I shall be **$7,735.00** including all related expenses, including travel expenses outlined in Section III.

2. The above consideration for the Contractor's services is based on the time reasonably expended by the Contractor to complete the tasks herein above described in Section I and is based on a rate of **$35 per hour** of time expended.

3. The Contractor shall submit an invoice describing the services, including dates and hours of work, for part payment of the contract price not more frequently than once per month. The contractor shall submit an invoice requesting payment no more than thirty (30) days after the work has been performed. Invoices submitted after this date may not be paid.

4. The Contract is retained by WISD only for the purposes and to the extent sent forth in this Agreement, and the Contractor's relationship to WISD shall, during the life of this Agreement, be that of an independent contractor. As such, WISD agrees that the Contractor shall be free to dispose of such portion of his/her entire time, energy, and skill during regular business hours that s/he is not obligated to devote to WISD in such manner as the Contractor sees fit. The Contractor shall not be considered as having an employee status or as being entitled to participate in any plans, arrangements, or distributions by WISD pertaining to or in

the connection with any fringe, pension, bonus or similar benefits for the WISD's regular employees.  WISD will not withhold or pay any sums, state, federal or local taxes, FICA, Michigan School Employees Retirement, MESC insurance, or worker's compensation insurance, unless required by law.  The Contractor agrees to hold WISD harmless for the payment of such sum, interest, penalties or costs in the collection of same. Nothing in this agreement shall be construed to interfere with or otherwise affect rendering of services by the Contractor in accordance with its professional judgment.

5. The contractor has not been debarred, excluded or disqualified under the non-procurement common rule, or otherwise declared ineligible from receiving Federal contracts, certain subcontracts, and certain Federal assistance and benefits.

6. WISD acknowledges that the Contractor has no responsibility for the supervision of any WISD personnel in carrying out his/her contractual functions, and any recommendations made by the Contractor (other than in treating patients whom s/he has examined,) will require independent judgment of WISD prior to being effectuated.

7. WISD agrees that the Contractor shall have access to WISD premises at such time as is necessary for the Contractor to perform the above described tasks.  However, WISD may require at least a one week's prior notice relating to the use of certain facilities.

8. WISD agrees to promptly pay the invoices submitted by the Contractor upon verification of the rendering of the services and within 30 calendar days from receipt in the WISD's Business Office.

9. WISD agrees to report to the Internal Revenue Service all amounts paid or reimbursed for services of the Agreement in conjunction with the legal requirements.

### SECTION III – Other Considerations

1. All expenses for travel and mileage as a result of rendering the services identified in Section I are the responsibility of the Contractor. However, WISD may ask the Contractor to incur travel expenses not foreseen prior to the execution of this contract. If this occurs, WISD <u>pre-approved</u> travel costs associated with this Contract will be paid by WISD at a rate to be determined by WISD.  Such travel expenses must be submitted under the guidelines established by WISD, including expense submission dates and inclusion of detailed receipts.

2. Nothing in this Agreement shall be considered to create the relationship of employer and employee between the parties at any time during the life of this Agreement.

3. The work done by the Contractor shall be to the entire satisfaction of WISD.  Should the Contractor unsatisfactorily perform the duties, WISD may cancel the Agreement and the Contractor shall have no claim for any of the balance of the contract price remaining to be paid at date of termination other than amounts related to services provided prior to termination.

4. Either party may terminate this Agreement by giving the other 30 days advance written notice.

5. WISD may change the duties of the Contractor as above described, but such change shall not be a substantial alternation of the Contractor's duties, nor can such change be made without the input of the Contractor.

### SECTION IV – Insurance Coverage

In the event that the Contractor uses motor vehicles in the course of performing the services above described, the Contractor shall provide to WISD proof of public liability insurance and property damage insurance in such sums as shall be deemed appropriate by WISD.

The Contractor shall maintain at his/her own expense during the term of this Contract, the following insurance:

1.) Workers' Compensation Insurance with Michigan statutory limits of Employers' Liability Insurance with a minimum limit of $500,000 each accident;

2.) Comprehensive General Liability Insurance with a combined single limit of $1,000,000 each occurrence, $1,000,000 aggregate, for bodily injury and property damage. The policy shall include blanket contractual and liability and personal injury coverage.

The Contractor understands that WISD's liability insurance policies may not afford any coverage for any work associated with this contract. Therefore, the Contractor agrees to hold WISD harmless 1) for any sum related to the cost of liability insurance, 2) from any and all liabilities, claims, liens, demands and costs, of whatsoever kind and nature, and 3) from any associated attorney fees, arising out of the performance of the work described in Section I. The Contractor shall obtain and provide proof of public liability insurance in such sums as shall be deemed appropriate by WISD unless specific written exemption is provided by the Assistant Superintendent, Business Services. Neither party shall be responsible for any action or inaction of the other party or its officers, agents, or employees, nor for insurance costs or legal fees, related thereto.

## SIGNATURES

The Contractor acknowledges by his/her signature that he/she has read the Agreement and understands same and agrees this contract constitutes the total agreement between the parties and that anything not included in this contract is expressly excluded.

Agreed to on March 6, 2017

_____   DATE_____
Department Head

_____   DATE _____
Independent Contractor

_____   DATE _____
Washtenaw Intermediate School District

_____   DATE _____
Washtenaw Intermediate School District

I:\GROUPS\AgencyForms\Contracts\WISD Contract Individual.doc